## McCormick v. Jones, Admrx., et al.

(Decided September 23, 1919.)

### Appeal from Laurel Circuit Court.

1. Appeal and Error—Dismissal.—An appeal granted by the lower court will be dismissed upon motion in this court if it be not filed, as provided by section 738, Civil Code, twenty days before the beginning of the second term of this court; but if no motion to dismiss is made until after the submission of the case, the right is waived.

2. Appeal and Error—Transcript—Uncertified Record.—Where there is a partial transcript and it does not support the judgment, the uncertified portion of the record will generally be presumed to support the judgment.

3. Executors and Administrators—Compensation for Services Rendered Decedent.—Where relatives live together in the same family, the presumption will be that they do so live by mutual consent for the convenience of each other, and that each receives some benefit from the arrangement, and that one is not to compensate the other for services rendered unless the claim for such compensation be supported by clear and convincing proof of an express contract.

4. Wills—Devises—Title.—A will devising a house and lot to a named devisee which has been duly and regularly probated and from which no appeal has been prosecuted, vests perfect title in the devisee.

5. Liens—Pleading.—Where the pleadings do not contain averments sufficient to support a lien upon real property, or specific performance, or a prayer for such relief, the court is without jurisdiction to decree a lien or a reconveyance.

W. L. BRUNER for appellant.

H. C. CLAY for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming in part and reversing in part.

This action was instituted for the settlement of the estate of Elizabeth May, deceased, and during the taking of evidence it was discovered that a short time before the death of Mrs. May she had entered into a contract with appellant Hester McCormick, whereby Mrs. McCormick was to board and care for her, and while Mrs. May was boarding with Mrs. McCormick she became sick and directed Mrs. McCormick to go

to the First National Bank of East Bernstadt, and receive Mrs. May's entire deposit in that bank, amounting to $325.60. At a later date a debtor of Mrs. May came to the house and paid $544 to Mrs. May and she immediately passed it over to Mrs. McCormick for safe keeping. Mrs. May's illness became more serious and on October 14, 1913, she made her last will in which she devised to Mrs. McCormick a small house and lot in East Bernstadt in which they at the time resided. This property was supposed to be worth about $350. In the preparation of the action to settle the estate of Mrs. May, Mrs. Hester McCormick gave her deposition in which she related these facts. Thereupon an amended petition was filed on February 15, 1916, making Mrs. McCormick a party defendant with a prayer for judgment against her for $844.60, and that "a lien upon the house and lot described in the petition as the Hattie Swanner place in East Bernstadt, Kentucky," be adjudged. Finally the parties pleaded to an issue, it being alleged by Mrs. McCormick that she entered into a verbal contract with Mrs. May at the time Mrs. May came to her house to live, whereby Mrs. McCormick was to board, lodge and care for Mrs. May in consideration of Mrs. May paying to Mrs. McCormick $5, per month, provide a house, rent free, to Mrs. McCormick in which to live, and in case Mrs. May's health declined and her condition became serious, then Mrs. May was to pay Mrs. McCormick such further sum as would reasonably compensate Mrs. McCormick for the care and attention required by Mrs. May during such sickness; that the said sum of $325.60 received by Mrs. McCormick from the bank for Mrs. May was applied upon this account, except $25 that was paid to Dr. Morris for attending Mrs. May; that the $544 received by Mrs. McCormick from Mrs. May was also applied to the account for board and care rendered to Mrs. May, and that Mrs. May's estate was then indebted to Mrs. McCormick in a balance of $945.40, which was due and unpaid and she prayed judgment against the administratrix for said sum. The pleading further alleged that Mrs. May had given to Mrs. McCormick the house and lot in which they lived as further consideration for the nursing and attention received during her illness.

All these allegations were traversed by the administratrix except she admitted that Mrs. McCormick had received the $325.60 and the $544 of money belonging to

Mrs. May, and further admitted that Mrs. May had willed the house and lot to Mrs. McCormick.

Proof was taken in support of the issues and the case being submitted for judgment, the court entered a decree finding the contract made between Mrs. May and Mrs. McCormick with reference to the board and care to contain only these conditions: that Mrs. McCormick was to receive, board and care for Mrs. May for which Mrs. May was to pay her $5, per month, and furnish a house in which they all should live. That part of the contract alleged by Mrs. McCormick under which she claimed additional compensation during the sickness of Mrs. May, was rejected by the court as unproven. However, the judgment allowed Mrs. McCormick the $5 per month board which had been paid by Mrs. May and the further sum of $300.60 which had been received by Mrs. McCormick from the bank and applied to her own uses, but the court adjudged the $544 received by Mrs. McCormick from Mrs. May for safe keeping to belong to the estate, and adjudged Mrs. McCormick indebted to the estate of Elizabeth May in said sum. The court further found that Mrs. May executed a will by which she devised the house and lot in East Bernstadt to Mrs. McCormick. With all these findings we heartily concur, but are at a loss to understand upon what the learned trial judge based the remainder of the judgment which is as follows: "It further appearing that said Hester McCormick is insolvent and said house and lot is worth not exceeding $300, the court is of the opinion that it was not the intention of said Elizabeth May that said Hester McCormick should receive from her estate $544 and said house and lot, but that she only intended to make provision for the payment of a reasonable amount for her services in caring for her in her last illness. For this reason, it is further adjudged that the defendant, Hester McCormick, be required to elect now as to whether she will pay said $544 as herein adjudged, or reconvey said house and lot to said devisees of said Elizabeth May, and she now having elected to retain said $544 and having declined to pay same, or any part thereof, she is ordered and directed to immediately convey said house and lot to said devisees, plaintiffs and defendants herein, Cora D. Smith, etc. . . . , and said Hester McCormick having refused to make said conveyance, it is adjudged that the master commissioner of this court now make the same and said commissioner is now ordered and directed to prepare and

report to this court for its approval, a deed of convey-
ance for said property as herein ordered, and it is further
ordered that a writ of possession may issue in favor of
said devisees against said Hester McCormick at any time
after January 1, 1918.''

The house and lot were not in controversy. The will
had been duly and regularly probated in the Laurel
County Court and was not contested. No appeal had
been prosecuted from the judgment probating the will.
The title, therefore, to the house and lot was duly and
regularly vested in Hester McCormick at the time of the
institution of this action, and Mrs. McCormick was in
possession thereof. While Mrs. McCormick had received
from Mrs. May at the instance of Mrs. May the sum of
$544 to be held for the use and benefit of Mrs. May and
while this sum had not been repaid or accounted for by
Mrs. McCormick, it was not within the province of the
trial court to adjudge said sum a lien upon the house and
lot, which was the homestead of Mrs. McCormick. The
obligation was one *in personam* and not *in rem*. There
is no pleading or proof in the record which sustains the
judgment in so far as it attempts to subject the house and
lot to the payment of the $544. It, therefore, appears
that the judgment in so far as it undertakes to subject
the house and lot to the payment of this obligation or to
compel the appellant to reconvey the house and lot to the
heirs of Mrs. May is erroneous and must be reversed.

The appellant in her brief insists only that the judg-
ment is erroneous in that it is not supported by the plead-
ings or proof, especially that part which directs the mas-
ter commissioner for and on behalf of Mrs. McCormick
to convey the house and lot to the heirs of Mrs. May.
Appellees' brief insists that the judgment should not be
disturbed for three reasons: (1) that the transcript
was not filed within the time fixed by section 738 Civil
Code, and the appeal should be dismissed; (2) the trans-
script is incomplete, and being so, this court is unable to
determine whether the pleadings support the judgment,
and the judgment must therefore be affirmed under our
well established rule that the presumption will be indulg-
ed in such case that the uncertified part of the record, if
presented, would sustain the judgment of the lower court;
(3) there was no express contract alleged or proven by
Mrs. McCormick which would entitle her to recover for
services rendered to an aged relative residing in her fam-
ily. Let us consider these three contentions separately:

(1) The judgment appealed from was rendered at the October term of the Laurel Circuit Court, December 1, 1917. The transcript was not filed in this court until August 22, 1918. The appeal was granted below. By section 738, Civil Code, it is provided ''the appellant shall file the transcript in the office of the clerk of the Court of Appeals at least twenty days before the first day of the second term of said court next after the granting of the appeal, unless the court extend the time, as for cause shown, the court may do.'' The first term of this court convening after the entry of the judgment in the Laurel Circuit Court, met the first Monday in January, 1918. The second term before the convening of which he was required to file his transcript at least twenty days, met in April, 1918. There was no extension of time granted for the filing of the transcript and the filing of the transcript on August 22 was too late. The appellees could have taken advantage of this delay and obtained a dismissal of the appeal by filing a motion to dismiss the appeal at any time on or before the submission of the case, but not afterwards. No such motion was entered and the appeal was not dismissed. Bailey v. L. & N. R. R. Co., 19 R. 1617, 44 S. W. 105; Siebert v. Grief, 27 R. 824, 86 S. W. 970; Sandy River v. Caudell, 108 Ky. 197. By her failure to enter such motion she waived the objection and it is now too late to urge a dismissal of the appeal on this ground. Welch v. National Cash Register Co., 103 Ky. 192; Edwards v. Logan, 24 R. 678, 69 S. W. 800; Nickells v. Citizens Bank, 109 Ky. 641. Had the appeal been dismissed on motion another appeal might have been granted by the clerk of this court. Eddelston v. Eddelston, 173 Ky., 202.

(2) The transcript is incomplete. Only a part of the pleadings are copied. The original petition is not in the record nor is there an answer or other pleadings filed previous to the amended petition which is the beginning of the transcript in this case. Just what the petition or other pleading contained we cannot surmise. We cannot say whether they support the judgment rendered by the lower court or not. But we do know the admission of the pleading of appellees that Mrs. May devised the house and lot to Mrs. McCormick is sufficient, being a subsequent pleading to bind the appellees and to prevent their asserting a lien upon the house and lot in question. We do not overlook the rule that where there is a partial transcript

of the record the presumption will be indulged that had the record been copied in whole it would have sustained the judgment. But that rule has no application to the facts of this case. All the record pertaining to the Mc-Cormick branch of the case which involves the house and lot and the two sums, $325.60 and $544, is before the court. What was contained in the record previous to that time concerning the settlement of the estate of Mrs. Elizabeth May and which did not involve Mrs. McCormick and to which she was not a party, is wholly unimportant so far as this case is concerned.

(3) We have several times written that where relatives live together in the same family, the presumption will be that they do so live by mutual consent for the convenience of each other, and that each receives some benefit from the arrangement, and that one is not to compensate the other for services rendered unless the claim for such compensation be supported by clear and convincing proof of an express contract. Armstrong's Admr. v. Shannon, 177 Ky. 547; Bolling v. Bolling's Admr., 146 Ky. 316; Ballard v. Ballard, 177 Ky. 260. The trial court was of opinion that Mrs. McCormick did not prove an express contract with Mrs. May for additional compensation, and while there is some evidence on each side, we are inclined to the opinion that the judgment of the lower court is sustained by the weight of the evidence. We, therefore, conclude that the judgment must be affirmed in all respects except in so far as it directs the master commissioner of the Laurel Circuit Court to convey for Mrs. McCormick the house and lot in East Bernstadt to the heirs of Mrs. May named in the judgment. To this extent it is reversed, with direction to modify the judgment so as to conform to this opinion.

Judgment affirmed in part and reversed in part.