JUDGE HARDIN
delivered the opinion op the court.
Zachariah Goff, a man of advanced age, unmarried and without descendants, and the owner of an estate partly consisting of three slaves and several small tracts of land, on one of which he resided, on the 29th day of March, 1851, made a conveyance to Michael Gilbert of all his estate of every description, reserving to himself only the use thereof for life; the sole consideration of the conveyance being the service and use of a slave named Sam, owned by Gilbert, for as long thereafter as Goff should live.
Gilbert died about the year 1858, leaving his daughter Ann E. Lummis, then the wife of H. H. Lummis, his only heir; and Goff dying shortly afterward, Lummis was appointed his administrator on the 8th of November, 1858, and gave bond as such, with the appellees, George R. Bibb and T. B. Harrison, his sureties.
On the 22d day of March, 1860, James W. Goff commenced an ordinary action against said administrator on a writing purporting to be the promissory note of Zachariah Goff to him for $2,000, dated the 25th of December, 1850, and payable one day thereafter. The action, being defended by the administrator, progressed until his death, and was afterward revived and prosecuted against the appellee Harrison, to whom, as sheriff, the estate of Zachariah Goff had been committed after the death of Lummis; and in May, 1866, the case finally terminated in a judgment for the plaintiff for the entire amount of his claim, which he immediately assigned to the present appellant, L. A. Wood.
An execution issued on the judgment, to be levied of assets *62 in the hands of Harrison as administrator, was returned indorsed, in substance, “no property found.” And on the 1st day of March, 1867, Wood instituted this suit in equity against Harrison as sheriff and acting administrator of Z. Goff, deceased, and said Ann E. Lummis as heir of Gilbert and executrix of her late husband, and against both her and Bibb, as executors de son tort of Goff and others, seeking to set aside the deed from Goff to Gilbert as voluntary and fraudulent, and to subject all of the estate embraced by it to the payment of said judgment; and to recover also against Harrison and Bibb as sureties of Lummis in his bond as administrator, and against Harrison also as administrator of Goff, and also against said Ann E. Lummis and Bibb for an alleged intermeddling with and conversion of the estate of Goff.
The defendants answered, jointly and severally, controverting the material averments of the petition, and asking to be allowed, in the event of the deed from Goff to Gilbert being set aside, an account for the services of the slave Sam, and the fees of the attorneys who were employed in the defense of the first suit, and other accounts, as preferred claims against the estate of Zachariah Goff, deceased.
After a reference to a commissioner for the purpose of ascertaining the amount of the estate with its accumulations, and in what it consisted, and in whose hands it was, the court rendered a judgment determining the rights and liabilities of the parties in May, 1869, which is in substance and effect as follows:
1. That, as to the plaintiff’s debt, the conveyance from Goff to Gilbert was fraudulent and void, and the land, which was reported by the commissioner to be worth $1,610, was adjudged to be sold, and the proceeds applied to the payment of the debt.
2. That the personal estate which came to the hands of H. H. Lummis as administrator of Goff amounted with interest to $1,207.16, of which, after deducting $120.18 for amount of *63 liabilities paid by Lummis, a balance of $1,086.98, which was adjudged to be paid to the plaintiff by Ann E. Lummis, executrix of H. H. Lummis, and Bibb and Harrison, as his sureties in his bond as administrator.
3. It appearing that said Ann E. Lummis was accountable for the rents and use of the land, with interest thereon, amounting to $978.50, it was adjudged that the plaintiff recover that sum of her. But
4. Besides allowing the credit of $120.18, the court ordered that the judgment be credited by $1,692.60, as the estimated hire of the slave Sam, at $130 per annum, from the 29th of March, 1851, till the 29th of March, 1858, with interest thereon; and also by the further sum of $200 for the fees of the attorneys engaged in defense of said suit at law. Erom that judgment this appeal is prosecuted.
There is no valid objection to the allowance of the credit of $120.18. But it is argued for the appellant that the court-erred in allowing each of the other credits.
Conceding that the deed to Gilbert was fraudulent and void as to the creditors of the grantor, an essential inquiry is presented whether it was actually or constructively fraudulent; for if it was fraudulent in fact it could not stand, even for the purpose of reimbursement or indemnity; while if it was only legally or constructively fraudulent, it should have been upheld in favor of the grantee to the extent of securing restitution of the amount of the actual consideration given or paid by him, and only the excess of the property should have been subjected to the plaintiff’s debt. (Short v. Tinsley, 1 Met. Ky. 397; Whitaker v. Garnett, &c., 3 Bush, 402; 1 Johnson’s Chy. Rep. 478.)
It sufficiently appears from the declarations of Goff, as well as the inadequacy of the consideration of the deed and other circumstances, that the deed was actually fraudulent on his part; but the evidence fails to satisfy us that it was so on the *64 part of Gilbert, and we are of the opinion that so far as he was concerned it should have been treated only as constructively fraudulent. But admitting the right of Mrs. Lummis, as the representative of Gilbert, to retain in her hands or enforce as a lien on the land the actual outlay made by her father in the use of the slave Sam, an important and somewhat difficult question arises as to the correct mode of estimating the sum to be allowed for the use of Sam. The evidence conduces to the conclusion that Sam might have been hired, in the ordinary way of hiring out slaves from year to year, for $130 per annum, and the court seems to have treated the transaction as such a hiring, and hence allowed as the gross amount of these annual hirings and interest thereon the sum of $1,692.60. But we can not concur in adopting this as a correct basis for adjusting the amount of Gilbert’s actual advancement to Goff as the consideration of the deed. It does not appear that the slave Sam could have been sold or hired for a period of seven years for $1,692.60, payable at the end of the term, the purchaser. or hirer assuming the ordinary risks; and it is scarcely reasonable to suppose that Gilbert, in granting to Goff, then about seventy years old, a life-estate in Sam, estimated the actual consideration he so paid, as the hire of Sam for seven years, at $130 per annum, amounting, without interest, to $910. As we construe the transaction, it was a chancing bargain oh the part of Gilbert by which, as between him and Goff, he acquired the right to the property at the death of the latter for the inadequate consideration of the sale to Goff of an estate for. the remainder of his life in the slave, Goff taking the risk of the termination of this estate both by his own death and that of Sam; and as against all except the creditors of Goff it secured the estate to Gilbert, although either Goff or the slave might have died on the next day. For these reasons it seems to us that the true criterion for estimating the value of the consideration paid by Gilbert was *65 to ascertain what was the fair value of an estate in the slave Sam for the life of Zachariah Goff on the 29th day of March, 1851, considering the value of the use of the slave and the probable lives of himself and Goff, and on the sum so ascertained to allow interest from that time.
The only remaining question of importance is, whether the appellees were entitled to the credit of $200 for the fees of attorneys employed to defend the suit of J. W. Goff against Z. Goff’s administrator.
It does not appear that the fees were unreasonable, or that the suit was such as the administrator should not have defended; and ordinarily the fees of counsel so employed by a personal representative should be borne by the estate and not by him individually. But to this general rule there are exceptions; and although a personal representative incur expense ostensibly for the benefit of the creditors or distributees of the estate by prosecuting or defending suits, if in fact the litigation is carried on for his own exclusive benefit, it would be inequitable and manifestly unjust to burden those who may be ultimately entitled to the estate with the expense of such litigation.
It is a principle not inapplicable to this case, that while every encouragement should be given to defend estates against unjust claims, every discouragement should also be given to attempts of personal representatives to carry on speculations for their own private interests at the expense of the estates intrusted to them. (Hartzell v. Branin’s heirs, 5 Binney, 138; Wither’s appeal, 1 Harris, 582.)
The debt of J. ~W. Goff being the only one asserted against the estate of Z. Goff, deceased, all of which was claimed by Gilbert’s representatives, it is obvious that they were exclusively interested in defending the claim of J. W. Goff, and especially so as the deed to Gilbert was valid as against all others except the creditors of Z. Goff’s estate. The defense seems moreover to have been made in the interest of Gilbert’s *66 representatives as the real parties interested in preventing a recovery by J. W. Goff. We are therefore of the opinion that the credit of $200 was erroneously allowed.
We concur in the conclusion that neither Harrison nor Bibb should have been held responsible except as the surety of H. H. Lummis. As the allowance for the use of the slave Sam will inure to the benefit of Mrs. Lummis, it should be applied first in satisfaction of her liability for rents.
Wherefore the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.