## Englert v. Weitlauf.

(Decided December 21, 1928.)

196

L. B. ALEXANDER for appellant.

BEN S. ADAMS, W. A. MIDDLETON and HOLLAND G. BRYAN, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On March 20, 1925, the appellee, Ruth Weitlauf, was by a judgment of the McCracken circuit court divorced from her husband, Philip Weitlauf. She was awarded the custody of their two infant children, alimony to the amount of $1,500 payable in one sum, and attorneys' fees of $300. Her husband was also adjudged to pay her $75 per quarter for the support of their infant children. The judgment further sustained an attachment which she had had issued in the divorce case, but it also provided that on the payment of the attorneys' fees and the alimony of $1,500 the attachment should be dissolved as to the personal property upon which it had been levied, but should remain a lien on the real estate described in the petition in the divorce case to secure the payment of the amount awarded for the support of the children. The alimony of $1,500 and the attorneys' fees were promptly paid, and so the attachment as to the personal property was by the terms of the judgment dissolved.

We gather from the record that Phillip Weitlauf was very recalcitrant in the payment from time to time of the

amount awarded his wife for the support of their children. He was the owner of a farm near Paducah comprising about 48 acres, and it was on this farm that the lien of the judgment to secure the payments for the maintenance of the children rested. On August 7, 1925, Phillip Weitlauf deeded this farm to the appellant, Ernest Englert, for the recited consideration of $2,500. On October 14, 1926, Ruth Weitlauf brought this suit against her husband, Phillip Weitlauf, and Ernest Englert, alleging that Phillip Weitlauf then owed her the sum of $300, for quarterly payments which were awarded her for the support of the children under the judgment and which he had not paid. She further alleged that the conveyance by him to Englert of the farm above mentioned was a fraudulent one and made to defeat her judgment and attachment lien. She asked that this conveyance be set aside and the property subjected to her claim. This suit was obviously brought under section 1906 of the Statutes. Phillip Weitlauf, although duly summoned, never filed any answer in this suit, nor made any defense thereto. On November 8, 1926, an answer was filed for Englert, but as appears from his deposition, to which we shall presently refer, he knew nothing then about this answer being filed, nor had he at that time authorized it to be filed for him. This answer traversed "for lack of information and belief" the judgment and attachment which appellee had obtained in her divorce case, and also the delinquency of Phillip Weitlauf in the payment of the maintenance awarded his wife for their children. Englert affirmatively pleaded that the appellee, Ruth Weitlauf, had not filed in her divorce case the lis pendens notice provided for by section 2358a1 of the Statutes. He also denied any fraud in the conveyance of the farm to him by Phillip Weitlauf.

On November 21, 1927, Ruth Weitlauf filed an amended petition in which she stated that there had, since the institution of this action, accrued the further sum of $300 for the maintenance awarded her for the children by the judgment in the divorce case, and she prayed judgment against her husband for the $600, and for a sale of the farm to satisfy such judgment. No answer was filed to this amended petition by any of the parties to this litigation. On December 23, 1927, the appellant, Ernest Englert, filed a paper in court in which he recited that, having discovered that an answer had been filed for him

without his knowledge or authority previously given, and having discovered that his interest had been protected under that answer, he now ratified the filing of that answer and adopted it as his own.

On June 27, 1927, the appellant gave his deposition as if under cross-examination in this case. Exceptions were filed to this deposition, but the record fails to show that these exceptions were ever pressed upon the court, considered by the court, or passed upon by it, and hence under familiar law the exceptions must be considered as having been waived. Hatfield's Adm'r v. Hatfield, 166 Ky. 761, 179 S. W. 832. The case was submitted to the court on the pleadings and this deposition of the appellant. The court set aside the conveyance of Phillip Weitlauf to the appellant, ordered the property sold as a whole, and adjudged that out of the proceeds the appellee should be paid $600, the balance, if any, to remain in court subject to its further orders. The property was duly advertised by the commissioner and was sold by him on the 6th day of February, 1928. Appraised at $3,000, it brought $2,500. The sale was reported to the court on the 7th day of February, 1928, and on the 9th day of February following the appellant filed his exceptions to that report. These exceptions so far as this record shows have never been passed upon, because on the 8th day of February the appellant executed a supersedeas bond and on the 10th day of February supersedeas issued and was duly executed. This appeal is prosecuted by Englert from that part of the judgment which set aside the conveyance from Phillip Weitlauf to Ernest Englert, subjected the property to Ruth Weitlauf's claim, and ordered it sold as a whole.

Appellant first contends that as he had traversed appellee's petition and she offered no proof that she had secured in her divorce case any judgment or had been awarded any lien to secure the alleged payments ordered to be made for the children, the court erred in holding in this case that she did have such a judgment and lien. The appellee filed with her petition in this case a certified copy of the judgment in the divorce case. Both cases were in the same court. The traverse of the appellant was based on a lack of "information and belief." This was not a good traverse of the allegations concerning this judgment.

In Edge et al. v. Central Construction Co., 195 Ky. 646, 243 S. W. 19, the appellee had brought suit to enforce certain apportionment warrants. The appellants in their answer traversed for lack of "information and belief" the passage of the ordinances under which the work, for which the apportionment warrants had been issued, had been done. In that case we said that while section 113, subsec. 7 of the Civil Code, permits a denial of sufficient knowledge or information to form a belief concerning alleged facts and so to traverse them, yet such permission is by the terms of the subsection of the Code itself confined to the state of case where the facts are not presumptively within the knowledge of the pleader. The ordinances there in question were public records, easily accessible to the pleader. Copies of them were filed with the petition. In such state of case we said the facts were presumptively within the knowledge of the pleader, and he could not deny their existence for an alleged lack of information or knowledge to form a belief concerning their existence.

In Gridler v. Farmers' & Drovers' Bank, 12 Bush, 333, we said:

"This court does not claim the right, and has never attempted to exercise the power, of refusing to allow a defendant to rely upon a want of belief where he has not sufficient knowledge or information upon the subject of the controversy to enable a person of ordinary intelligence to form a belief. But when the record, as made up at the time of the preparation of his plea, furnishes the necessary information, or when the fact is necessarily within his personal knowledge, we have declined to allow an abuse of the provisions of section 125 of the Civil Code by holding that such pleas are shams, and that judgment may be rendered as if no answer had been filed."

These cases and those cited in them are conclusive of this contention of the appellant. The judgment in the divorce case was a public record in the same court where the instant case was pending. It was easily accessible. A certified copy of it which on its face showed the date it had been rendered was filed with the petition in this case. To permit the appellant to deny its existence because of lack of information or knowledge sufficient to

form a belief as to its existence would be to trifle with a Code provision never meant to permit such a sham pleading. There is no merit in this contention of appellant.

As to the arrears of the payments ordered for the support of the children alleged in the original petition, the traverse based on lack of information or knowledge sufficient to form a belief was sufficient, as this was a matter not presumptively within the knowledge of the appellant. But he did not traverse the amended petition, and so it stood admitted that there was due the appellee at least $300.

The fraudulent purpose which prompted the conveyance in this suit and which the husband of the appellee by his failure to answer admitted was the effort to defeat the lien upon Phillip Weitlauf's property adjudged by the court as security for a continuing obligation which that judgment put upon Phillip Weitlauf. If the appellant participated in that fraudulent purpose, the appellee under section 1906 of the Statutes was entitled to have that conveyance set aside and her lien protected and enforced.

On the question whether appellant participated in the fraudulent purpose of Phillip Weitlauf, the proof of the appellant is clear to us that he was conniving with Phillip Weitlauf in an effort to defeat Ruth Weitlauf in the collection of the maintenance awarded for the support of the children. It is true Englert testifies that he paid $2,500 cash to Phillip Weitlauf for this farm of 48 acres, but the sidelights thrown on this statement by his own testimony puts quite a strain upon the credulity of the reader of it. True it is that he may have physically handed over $2,500 to Weitlauf in the attorney's office where the deed was drawn, but the evidence shows that Englert was a man of no particular means, running a small garage, and doing not much more, if anything, than making a comfortable living. He claims to have kept the money in a tin box behind a picture frame in the house where he lived, although he admits that at about this time he had a bank account. He gives no rational explanation of how he accumulated this sum of money. But whether the money paid over in the attorney's office was Englert's or not, under section 1906 of the Statutes the court will set aside a fraudulent conveyance, even though the grantee paid the consideration, if the grantee participated in the grantor's fraud. McDonough v. McGowan, 165 Ky.

425, 177 S. W. 277. The evidence further shows that Englert, the appellant, bought this farm without ever having gone out to look it over for that purpose; that he conducted the meager negotiations for its purchase through the two sons-in-law of Phillip Weitlauf who had married his daughters by a former marriage; that Englert was related to one of these two sons-in-law; that it was they who sent for him to come to the attorney's office in connection with this deed; that he never took possession of the premises, but left Phillip Weitlauf in full possession of them; that he claimed to have leased orally the premises to his cousin, the son-in-law of Weitlauf, for the sum of $150 per year, Weitlauf to pay all taxes and to keep up the repairs. If Englert did pay the $2,500 he claims he paid, it will be noted that this $150 is just 6 per cent. interest on that amount. Englert never went about the premises to see how they were kept. He did not know what crops were growing on the place, and in fact displayed profounder ignorance regarding his property than one would naturally expect from an owner. Appellant knew all about the trouble that Phillip Weitlauf was having with Ruth Weitlauf over Weitlauf's recalcitrancy in paying the maintenance awarded appellee for the support of the children, although he claims he did not know at the time the property was conveyed to him that Phillip Weitlauf was then behind in his payments. When this suit was brought appellant did not employ any attorney to represent him and did not know he had an attorney at the time his deposition was taken, the kindly office of securing an attorney having been performed for him by his cousin. When the appellant was served with notice to give his deposition he at first ignored it because his cousin told him to pay no attention to it. Appellant testified that he regarded himself as fully protected in the payment of his $2,500, for he expected his cousin to reimburse him for anything he lost in this case. The participation of appellant in Phillip Weitlauf's fraudulent purpose to defeat his wife's lien is glaringly apparent from this record, and appellant's second contention that no fraud was proven is also without merit.

It results that the court did not err in setting aside the conveyance and refusing, so far as the appellee is concerned, to give the appellant a lien to secure him in the repayment of the $2,500 he claims he paid for this place, conceding that he did so. Having participated in

the fraud, his claim, if he has any, a question which we do not decide, since this is a matter between him and Phillip Weitlauf, who is not a party to this appeal, must be postponed at least to the lien of the appellee. It was so expressly decided in Willett v. Froelich, 139 Ky. 779, 90 S. W. 572, 28 Ky. Law Rep. 798, and Wood v. Goff, 7 Bush, 59. As this lien was awarded to secure a continuing obligation on the part of Phillip Weitlauf, appellant must be postponed in the assertion of any claim he may have to this property or its proceeds until the lien awarded to secure the obligation of Phillip Weitlauf under the judgment in the divorce case to pay for the support of his children has been finally discharged.

It is lastly urged that even if the conveyance should be set aside, yet the court erred in ordering any more of the farm sold than was necessary to pay on the amount due the appellee at the time of the judgment. There are two answers to this: First, the conveyance having been set aside as fraudulent, the title was revested in Phillip Weitlauf, and he is not making any complaint of the sale of the farm as a whole. Secondly, even conceding that the appellant can raise this question, he has not made the purchaser at the sale a party to this appeal. Such purchaser is a necessary party now to determine whether the farm was properly sold as a whole or not. The grounds relied upon for a reversal being insufficient to accomplish that purpose, the judgment of the lower court is affirmed.